STATE OF CONNECTICUT *v.* TIMOTHY J. DAY
(4982)

DUPONT, C. J., DALY and BIELUCH, Js.

Argued April 2—decision released August 25, 1987

*A. A. Washton,* with whom was *Peter W. Rotella,* for the appellant (defendant).

*John F. Cocheo,* assistant state's attorney, with whom, on the brief, was *C. Robert Satti, Sr.,* state's attorney, for the appellee (state).

DALY, J. The defendant appeals from the judgment of conviction, after a jury trial, of manslaughter in the second degree with a motor vehicle while intoxicated

in violation of General Statutes § 53a-56b.[1] The defendant claims that the trial court erred (1) in its instruction to the jury concerning the elements of the crime and the state's burden of proof, (2) in an evidentiary ruling excluding the admission of a past recollection recorded, and (3) in improperly cross-examining the defendant's expert witness thereby depriving the defendant of a fair trial. We find no error.

The jury could reasonably have found the following facts. On November 1, 1984, at 3 p.m., after concluding his work day, the defendant commenced drinking brandy with a fellow employee in their employer's parking lot in Norwich. The defendant then drove the fellow employee to the Lincoln Inn where each consumed three small glasses of beer. At approximately 4 p.m., the defendant drove his van back to the employer's parking lot, and dropped off his fellow employee. The defendant then proceeded to a gas station. He left the gas station at about 5 p.m. and headed home, proceeding east on Route 2. The automobile ahead of the defendant pulled over to the right hand side of the east bound lane to allow him to pass. The defendant then proceeded to overtake and pass the automobile while travelling at a speed between sixty and seventy miles per hour in the west bound lane. The defendant then collided with an oncoming vehicle in the west bound lane. After the impact, both vehicles came to rest in the east bound lane. The operator of the vehicle with which the defendant collided was pronounced dead on arrival at the hospital to which he was transported. Due to an odor of alcohol detected by the attending physi-

---

[1] At the time relevant in this case, General Statutes (Rev. to 1983) § 53a-56b (a) provided: "A person is guilty of manslaughter in the second degree with a motor vehicle while intoxicated when, in consequence of his intoxication while operating a motor vehicle, he causes the death of another person. For the purposes of this section, 'intoxication' shall include intoxication by alcohol or by drug or both."

cian, a blood sample was extracted from the unconscious defendant by the attending physician. The blood sample, upon testing, was detected to have a blood alcohol content of .234 percent. Empty beer bottles were found in the defendant's van at the scene of the accident.

Two eyewitnesses testifying for the state placed the point of impact of the two vehicles in the west bound lane, while the defendant's accident reconstruction expert's opinion was that the accident had occurred in the east bound lane. Oil spots and a gouge mark at the scene were considered by him in formulating his opinion. The chief state toxicologist also analyzed the blood sample taken at the hospital after the accident and found it to have a .18 percent alcohol content, and extrapolated that to a blood alcohol content of .21 percent at the time of the accident. A guilty verdict was returned by the jury, and the defendant appeals from the judgment of conviction.

The defendant's first claim is that the trial court erred in its charge to the jury by effectively shifting the burden of proof on the element of intoxication to the defendant.[2] This shifting was effectuated, the defend-

---

[2] The trial court's charge was as follows: "Under the statute there are three elements which the State must prove *beyond a reasonable doubt.* First, that the accused caused the death of [the victim] by the operation of his automobile; second, that at the time the accused was intoxicated; and third, that as a consequence of that intoxication he caused the death of [the victim] by operation of his automobile.

"There does not appear to be much question concerning the first element. It is your privilege to determine whether or not the death of [the victim] was caused by the accused in the operation of his automobile. What I'm stressing is that there isn't too much doubt about the intoxication. For all intents and purposes, that has been acknowledged.

"Concerning the second element again of intoxication, I'm going to review briefly the evidence that has been presented. To begin with, our legislature has enacted a law that says .01 [sic] or more by weight of alcohol in

ant claims, by the court's charging the jury that "there isn't too much doubt about the intoxication, for all intents and purposes, that has been acknowledged," and allowing the jury to find "that the defendant is under the influence of liquor unless other countervailing evidence is offered to show that he was in control of his faculties." The defendant did not object to this charge at trial, yet he now requests review under *State v. Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973). The defendant's claim of error on the burden of proof of an essential element of the crime charged implicates his fundamental constitutional rights, thus he has passed the first hurdle for *Evans* review. *State v. Whelan*, 200 Conn. 743, 756–57, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986); *State v. Thurman*, 10 Conn. App. 302, 306, 523 A.2d 891 (1987).

Our limited review of the record in this case, however, leads us to reject the contention that the defendant's claim is truly of constitutional proportions. *State*

a person's blood shall be prima facie evidence that he was under the influence of intoxicating liquor insofar as the operation of an automobile is concerned.

"There is evidence that the accused had—and it's up to you to recall what I'm about to tell you as far as the figures are concerned, but as I recall it, Doctor Berman who took a blood test said that the alcohol content was .234. Doctor Stolman, state toxicologist, State's witness, said that it was—when he had it examined, the blood of [the defendant] it was .180. He also calculated that at the time of the accident, his blood alcohol content would have been .210.

"Now, there is evidence—excuse me. The term 'prima facie' may be freely translated as meaning at first glance. The statute concerning the weight of alcohol in a person's blood allows a jury to find that such person is under the influence of liquor unless other countervailing evidence is offered to show that he was in control of his faculties. Accordingly, the true question for you to decide is, in view of the statute, in view of all the other evidence in the case, was the amount of liquor consumed by the accused such amount more or less sufficient to so affect his mental, nervous and physical processes that he lacked an appreciable degree of—he lacked to an appreciable degree the ability to function properly with relation to the operation of the automobile?" (Emphasis added.)

v. *Thurman,* supra. The record reveals that in this case
the element of intoxication was not disputed by the
defendant during the course of the trial. What the
defendant attempted to demonstrate to the jury was
that his intoxication did not cause the death of the vic-
tim. While we acknowledge that the state must prove
any undisputed elements of the crime charged beyond
a reasonable doubt, the element now complained of was
conceded by the defendant. In fact, in his closing argu-
ment, the defendant stated that there was no problem
with the state's proof of intoxication, and that the jury
need not concern itself with that element.[3] The defend-

---

[3] The defendant's closing argument included the following: "May it please
the Court, ladies and gentlemen of the jury, you may recall on the voir dire
I specifically asked you that even if the individual was under the influence
or intoxicated, but you found from the evidence that he was not the cause
of the accident, would you acquit him? I think each and every one of you
said you would. I specifically asked that question to make the distinction
between what are the issues in the case.

"There's no question, number one, and we're not going to spend any time
on it, the Defendant was operating the vehicle. The State has no problem
proving that. It's an admitted fact by the Defendant; and, frankly, the State
has no problem as far as the—what is termed intoxication is concerned.
I place very frankly little or no credence in Doctor Berman, but I do place
a lot of credence in Doctor Stolman who I think is highly reputable and
who has been the state toxicologist for, I think, 35 years. When he says
it was .18, *I will as an admission state to you that was above the level .10
at the time, which under the law made a person be under the influence.*

"So, the State really has no problem, and *I don't think you really have
to concern yourself with the question of operation or with the question of
intoxication,* but I do think, ladies and gentlemen, you do have to concern
yourself with that part of the statute under which this Defendant is charged.
He's charged with manslaughter in the second degree with a motor vehi-
cle while intoxicated, and it goes on to say, 'when in consequence of his
intoxication while operating a motor vehicle he causes the death of another
person.'

"Now, I think what you—the main issue really in this case is whether
or not this accident came about as a result of his intoxication or was there
some other cause. Now, in a criminal case the State has the burden of prov-
ing each and every element of the offense beyond a reasonable doubt. As
I said, *they're not going to have any problem with the first two elements,*
but I submit to you, ladies and gentlemen, there is a real problem as far

ant thereafter did not object to the trial court's instruction on the element of intoxication. In light of these circumstances, the record does not support his claim that he was deprived of his fundamental right to a fair trial by the instructions of the court regarding proof of intoxication. To allow the defendant to seek reversal now that his trial strategy has failed would amount to allowing him to induce potentially harmful error, and then ambush the state with that claim on appeal. See *State* v. *Collette,* 199 Conn. 308, 318, 507 A.2d 99 (1986); *State* v. *Silveira,* 198 Conn. 454, 467, 503 A.2d 599 (1986); *State* v. *Vilhotti,* 11 Conn. App. 709, 713, 529 A.2d 235 (1987). The defendant's claim is not entitled to further review.

The defendant's second claim is that the trial court erred in excluding evidence of his past recollection recorded. While testifying, the defendant attempted to have a written application for insurance benefits introduced as evidence. The application, however, had not been filled out until twenty days after the events from which the prosecution arose. The trial court upheld the state's objection and the defendant claims error in that ruling.

The admissibility of such a memorandum is within the discretion of the trial court. *Schenck* v. *Pelkey,* 176 Conn. 245, 250, 405 A.2d 665 (1978). One ground for the exclusion of such evidence is the fact that it was not made at or about the time of events recorded in it. *Gigliotti* v. *United Illuminating Co.,* 151 Conn. 114, 124, 193 A.2d 718 (1963). That ground was one of several relied upon by the trial court in this case, and the defendant has failed to demonstrate that the court abused its discretion in excluding that memorandum, signed by the defendant nearly three weeks after the

as the third element, that is, when in consequence of his intoxication in operating a motor vehicle he causes the death of another person." (Emphasis added.)

events transpired. B. Holden & J. Daly, Connecticut Evidence § 124 (d). In fact, the defendant, after a short recess, testified concerning the events of the day in question, and that testimony was practically a verbatim recitation of the statement made in the excluded memorandum. The defendant, therefore, has not demonstrated that the exclusion of that memorandum was harmful to his defense. *State* v. *Luzzi,* 147 Conn. 40, 44, 156 A.2d 505 (1959).

The defendant's final claim is that the court erred in posing a series of questions to his accident reconstruction expert, thereby depriving him of his right to a fair trial. *State* v. *Jenkins,* 8 Conn. App. 35, 42, 510 A.2d 1370 (1986). The expert testified that in his opinion, based upon the evidence which he reviewed, the accident occurred in the defendant's, rather than the victim's lane of travel on the highway. The trial court's questions to the expert were related to (1) eliciting from the witness what information was available to him in formulating his opinion with respect to the gouge mark on the highway and the fluid trails which resulted from the accident, (2) why fluid trails were not visible at the locus of the gouge mark, and (3) how he had arrived at his opinion about the cause of the gouge mark.

The defendant objected at trial to some of the court's inquiries, and now seeks review of other unobjected to questions under *State* v. *Evans,* supra 70. Essentially, the defendant claims that the entire series of questions deprived him of a fair trial. Such judicial inquiry is subject to *Evans* review. *State* v. *Fernandez,* 198 Conn. 1, 9–10, 501 A.2d 1195 (1985); *State* v. *Jenkins,* supra, 41. The defendant contends that the entire series of questions undercut his theory of how the events at issue transpired, and cast doubt on the credibility of his expert.

"We recognize that '[t]he trial judge occupies an impartial position and one of commanding authority, and it often happens in a court-room that he may ascertain the truth when counsel has failed.' *State* v. *Cianflone,* 98 Conn. 454, 469, 120 A. 347 (1923). While it is his responsibility to conduct the trial as impartially as is humanly possible, a trial judge must avoid 'taking an apparent position of advocacy in a case before him'; he must refrain from making 'remarks which are indicative of favor or condemnation or which disparage a defendant before the jury.' *State* v. *Echols,* 170 Conn. 11, 14, 364 A.2d 225 (1975)." *State* v. *Fernandez,* supra, 11–12.

The trial judge may, however, question witnesses with circumspection for several purposes. Among those purposes are " 'to bring the facts out more clearly and to ascertain the truth'; *Goggins* v. *Fawcett,* 145 Conn. 709, 713, 147 A.2d 187 (1958); in trying to bring out the facts to resolve a doubt it apparently had as to the admissibility of certain evidence; *Hutchinson* v. *Plante,* 175 Conn. 1, 3, 392 A.2d 488 (1978)"; *State* v. *Fernandez,* supra, 13; and to clarify the testimony of the witness. *State* v. *Mack,* 197 Conn. 629, 641, 500 A.2d 1303 (1985); *State* v. *Echols,* supra.

Most of the questions posed by the trial judge in this case were made during colloquies which sought to ascertain the qualification of the expert and the foundation for several specific areas of his testimony. The trial judge was caught in the midst of a hard fought battle between opposing counsel full of argument and objections, and properly sought to determine what evidence was admissible through the testimony of the defendant's expert. See, e.g., *Hutchinson* v. *Plante,* supra. There is no indication, in light of our review of the transcript, that the court abused its discretion by these questions. Id.

The remaining inquiries by the court all related to the factual foundations of the expert's opinion. It is well within the discretion of the trial judge to elicit facts in order to clarify testimony, clear up misunderstanding, and ascertain the truth. *State* v. *Fernandez,* supra; *State* v. *Mack,* supra.

The substance of the inquiries in this case does not indicate that the trial judge was conveying to the jury his own impression of the credibility of the defendant's expert witness;[4] *State* v. *Fernandez,* supra, 15; nor indicating to them any personal opinion he may have had of the defendant's guilt or innocence. *State* v. *Echols,* supra, 14. The trial judge's questions in these areas did not place it in the role of an advocate, even though they may have pointed out the difficulties in the defendant's case. Id.

The trial court also instructed the jurors, in response to the defendant's objection to its inquiries, that they should not give his questions more weight than those of either counsel and that they should not guess at or surmise his feelings on any particular point. The court also gave a curative instruction at the conclusion of the case. See *State* v. *Jenkins,* supra, 44. The inquiries of the trial judge, in the midst of the battle between counsel over the exact nature and content of the expert's testimony, were not prejudicial, and did not deprive the defendant of a fair trial. See *State* v. *Reid,* 193 Conn. 646, 663, 480 A.2d 463 (1984); *State* v. *Frazier,* 7 Conn. App. 27, 31, 507 A.2d 509 (1986).

There is no error.

In this opinion the other judges concurred.

---

[4] As we have recently held " '[w]here credibility [is] . . . so significant . . . a trial judge should eschew an examination of a key witness. . . .' *State* v. *Fernandez,* [198 Conn. 1, 15, 501 A.2d 1195 (1985)]." *State* v. *Drouin,* 12 Conn. App. 101, 104, 529 A.2d 740 (1987). In this case, the credibility of the expert witness was not seriously questioned, rather the judge sought to elicit the facts from which the expert formed his opinion. Thus, this case is distinguishable from *State* v. *Drouin,* supra.