STATE OF CONNECTICUT *v.* JAMES BOONE
(5703)
(5840)

SPALLONE, DALY and NORCOTT, Js.

Argued March 10—decision released June 21, 1988

*Peter A. Gutermann,* special public defender, for the appellant (defendant).

*Julia DiCocco Dewey,* assistant state's attorney, with whom, on the brief, was *Peter Markle,* former assistant state's attorney, for the appellee (state).

NORCOTT, J. After a trial to a jury, the defendant was found guilty of assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and was acquitted of the charge of robbery in the first degree in violation of General Statutes § 53a-134.

On appeal, the defendant claims that the trial court erred (1) in failing to instruct the jury on the defendant's requested defense of duress,[1] (2) in permitting the state to question the defendant and to comment upon the defendant's pretrial silence, (3) in admitting evidence of a pretrial identification of the defendant, (4) in denying the defendant's motions for judgment of acquittal, (5) in failing to declare a mistrial as a result of judicial misconduct at trial, (6) in its instructions to the jury, and (7) in finding a probation violation based upon a conviction which resulted from an erroneous and unfair trial. The defendant also claims that he was denied due process of law and a fair trial because of prosecutorial misconduct. We find no error.

---

[1] In addition to his defense of duress, the defendant asserted a self-defense claim arguing that the victim, Ronald Rinaldi, initiated a violent assault which the defendant justifiably resisted. General Statutes § 53a-19 provides: "USE OF PHYSICAL FORCE IN DEFENSE OF PERSON. (a) Except as provided in subsections (b) and (c) a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless

From the evidence introduced at trial, the jury could reasonably have found the following facts. On November 27, 1985, Ronald Rinaldi spent several hours drinking beer at a Waterbury bar. When he left the bar, Rinaldi went to his brother's house in Waterbury where he consumed more beer. Rinaldi left his brother's home sometime between 1:30 and 2:00 a.m. on Thursday, November 28.

As Rinaldi was driving home, two women who were standing on the side of the road near the intersection of Grove and Willow Streets in Waterbury signalled to him. Rinaldi pulled his car over, and after a brief conversation, he offered the women a beer. The women climbed into the car and directed Rinaldi to a parking lot on Grove Street. Once there, Rinaldi again offered the women a beer. One of the women responded by saying "It's not your beer we want, its your money." Both

the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm.

"(b) Notwithstanding the provisions of subsection (a), a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating, except that the actor shall not be required to retreat if he is in his dwelling, as defined in section 53a-100, or place of work and was not the initial aggressor, or if he is a peace officer or a private person assisting such peace officer at his direction, and acting pursuant to section 53a-22, or (2) by surrendering possession of property to a person asserting a claim of right thereto, or (3) by complying with a demand that he abstain from performing an act which he is not obliged to perform.

"(c) Notwithstanding the provisions of subsection (a), a person is not justified in using physical force when (1) with intent to cause physical injury or death to another person, he provokes the use of physical force by such other person, or (2) he is the initial aggressor, except that his use of physical force upon another person under such circumstances is justifiable if he withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force, or (3) the physical force involved was the product of a combat by agreement not specifically authorized by law."

women were armed with knives. Rinaldi did not give them the money, and an altercation ensued.

In the midst of the altercation, one of the women opened the car door and shouted out, "Yo." Immediately thereafter, the defendant, the woman's fiance, appeared at Rinaldi's car. The defendant entered the car, held a knife to Rinaldi's throat and demanded his money. The defendant and his female companions then fled after attacking Rinaldi with their knives, wounding him in the process. The defendant testified that he took no money from Rinaldi and only showed a knife to frighten Rinaldi into leaving the neighborhood. After the parking lot encounter, the defendant and the two women went to one of the women's nearby apartment.

After waiting in the apartment for a short time, the defendant and his fiancee drove the other woman to her apartment located a very short distance away. After dropping her off, the defendant and his fiancee once again encountered Rinaldi. After the incident in the Grove Street parking lot, Rinaldi had attempted to leave but could not start his car. Rinaldi armed himself with a pinchbar, a foot long metal device used for removing nails, and began walking down the street in search of medical help. Several witnesses observed Rinaldi staggering down Willow Street.

Upon seeing the defendant and his fiancee, Rinaldi announced to a bystander: "This is the bitch that just robbed me." Rinaldi then approached the defendant's car and punched his fiancee.

After Rinaldi struck the woman, the defendant, armed with a knife, got out of the car and approached Rinaldi. The defendant stabbed Rinaldi in the stomach causing him to fall. While Rinaldi was on the ground, the defendant stabbed him again in the chest. The defendant then fled the scene.

At approximately 4:25 a.m., Officer Stephan Patten of the Waterbury police department observed Rinaldi staggering down West Main Street while bleeding from the neck and chest areas. The officer helped Rinaldi to the police cruiser and took him to St. Mary's Hospital where doctors performed six hours of emergency surgery. At the time of his arrival, the defendant had lost approximately 50 percent of his total blood supply. The doctors treated Rinaldi for stab wounds to the stomach and chest, a punctured liver and lung, a slit throat and multiple lacerations on his hands, thumbs and fingers.

## I

The defendant first assigns error to the trial court's refusal to instruct the jury on the defendant's requested defense of duress. "When we are reviewing a trial court's failure to charge as requested, 'we must adopt the version of the facts most favorable to the defendant which the evidence would reasonably support.' *State* v. *Anonymous (1977-9),* 34 Conn. Sup. 612, 616, 380 A.2d 7 (1977); see *State* v. *Cassino,* 188 Conn. 237, 239, 449 A.2d 154 (1982); *State* v. *Arroyo,* 181 Conn. 426, 430 A.2d 967 (1980)." *State* v. *Fuller,* 199 Conn. 273, 275, 506 A.2d 556 (1986).

The defendant produced the following facts at trial. In April, 1985, the defendant's fiancee was raped, beaten and nearly killed in an incident for which the perpetrators were tried and convicted. Following that incident and the subsequent trial, both the defendant and his fiancee learned that their lives had been threatened. On the day before the incident with Rinaldi, a man had come to the defendant's apartment and told both the defendant and his fiancee that they were to be killed. In addition to these threats, the defendant and his fiancee testified at trial that Rinaldi had both verbally and physically threatened them before the

defendant used his knife to repel Rinaldi's attack. The defendant contends that this evidence was enough to have the defense of duress submitted to the jury. The trial court found no evidence of coercion in the case and refused the defendant's request for an instruction on duress. The trial court instructed the jury only on self-defense as a justification for the crime, pursuant to General Statutes § 53a-19.

"Duress is a legally recognized defense in this state; *State* v. *Rosado,* 178 Conn. 704, 708, 425 A.2d 108 (1979); and the legislature by statute has provided that the threatened imminent use of physical force upon a third person may constitute duress. See General Statutes § 53a-14."[2] *State* v. *Fuller,* supra, 277–78. " 'When a defendant admits the commission of the crime charged but seeks to excuse or justify its commission so that legal responsibility for the act is avoided, a theory of defense charge is appropriate.' [*State* v. *Rosado,* supra], 707. If the defendant asserts a recognized legal defense and the evidence indicates the availability of that defense, such a charge is obligatory and the defendant is entitled, as a matter of law, to a theory of defense instruction. Id., 707–708." *State* v. *Fuller,* supra, 278.

The state contends that the trial court was correct in refusing to give the jury instruction on duress because there was no evidence upon which any trier of fact could conclude that a third party's threat of

---

[2] General Statutes § 53a-14 provides: "DURESS AS DEFENSE. In any prosecution for an offense, it shall be a defense that the defendant engaged in the proscribed conduct because he was coerced by the use or threatened imminent use of physical force upon him or a third person, which force or threatened force a person of reasonable firmness in his situation would have been unable to resist. The defense of duress as defined in this section shall not be available to a person who intentionally or recklessly places himself in a situation in which it is probable that he will be subjected to duress."

imminent death or serious physical injury forced the defendant to assault Rinaldi. We agree.

In the first place, the defendant's contention that his concern about the alleged threats against himself and his fiancee constituted duress is without merit. " 'The rationale of the defense [of duress] is not that the defendant, faced with the unnerving threat of harm unless he does an act which violates the literal language of the criminal law, somehow loses his mental capacity to commit the crime in question . . . [but] rather it is that, even though he had done the act the crime requires, his conduct which violates the literal language of the criminal law is justified because he has thereby avoided a harm of greater magnitude.' 1 W. LaFave & A. Scott, Substantive Criminal Law § 5.3a." *State* v. *Rouleau,* 204 Conn. 240, 248–49, 528 A.2d 343 (1987). If we accept the defendant's story, the alleged threat of death or imminent physical injury was the result of the April, 1985 incident. This danger was the "harm of greater magnitude" the defendant was ostensibly trying to avoid. None of the threats, however, concerning the April, 1985 incident involving the defendant's fiancee had any remote connection to Rinaldi with whom the defendant's fiancee and the other woman had initially gone to the Grove Street parking lot. The claim that Rinaldi's actions during the Willow Street altercation and the April, 1985 incident were connected is specious.

With respect to the defendant's claim that the victim himself coerced the assault against him, we note that one basic principle constitutes the crux of the defense of duress. " '[I]f there was a reasonable, legal alternative to violating the law, "a chance both to refuse to do the criminal act and also to avoid the threatened harm," the defense will fail. [W. LaFave & A. Scott, Criminal Law, p. 379].' *United States* v. *Bailey,* 444 U.S. 394, 410, 100 S. Ct. 624, 62 L. Ed.

2d 575 (1980).'' *State* v. *Rouleau,* supra. Our careful review of the record leads us to conclude that the defense of duress here must fail in every respect. Several witnesses at trial testified that Rinaldi unsuccessfully attempted to retreat once he was confronted by the defendant on Willow Street. The evidence also reasonably supports the conclusion that the defendant not only did not take every opportunity to avoid Rinaldi but, rather, pursued him after stabbing him in the stomach. General Statutes § 53a-14 specifically provides, in pertinent part, that the defense of duress ''shall not be available to a person who intentionally or recklessly places himself in a situation in which it is probable that he will be subjected to duress.''

General Statutes § 53a-14 clearly requires that to be afforded the benefit of the defense of duress, the defendant must have engaged in the proscribed conduct because he was coerced. There was no evidence of such coercion produced at trial. Where the defense proposed is legally inadequate to support the requested instruction, the instruction should not be given. See *State* v. *Casey,* 201 Conn. 174, 180, 513 A.2d 1183 (1986); see also *State* v. *Woolfolk,* 8 Conn. App. 667, 672, 517 A.2d 252 (1986), cert. denied, 202 Conn. 802, 519 A.2d 1207 (1987). The trial court correctly concluded that the proper jury instruction regarding justification was that of self-defense and not duress.

## II

The defendant next claims that the trial court erred in permitting the state to cross-examine the defendant concerning his pretrial silence and to comment upon that silence during closing argument. We disagree.

The following facts are relevant to this claim of error. At trial, the defendant asserted a claim of self-defense, arguing that the victim, Rinaldi, initiated an attack which the defendant resisted. As part of his testimony,

the defendant claimed that prior to the stabbing, he warned Rinaldi that he would call the police should Rinaldi resort to violence. During Rinaldi's alleged attack, the defendant testified that he was struck with a crowbar.

The defendant conceded on cross-examination, however, that he never called the police for assistance, never reported Rinaldi's alleged assault, and never sought medical treatment for his alleged injuries. The defendant further conceded that he never discussed the incident with anyone. He also testified that when the police did respond, he left the scene.[3] Finally, a witness for the defendant, Dwight Penperton, testified that, during a conversation with the defendant at the New Haven correctional facility, the defendant flatly denied assaulting Rinaldi.

---

[3] The cross-examination of the defendant included the following exchange:

"Q: You said the police were coming.

"A: That was after I was walking away.

"Q: And, you didn't go up to the police and say, 'Help me, this guy just hit me'?

"A: No.

"Q: You walked away?

"A: Yes.

"Q: So, Mr. Boone, as it turns out, you stabbed Mr. Rinaldi, not once but twice, correct?

"A: Correct.

"Q: The chest and the stomach, correct?

"A: Correct.

"Q: You never had to go to the hospital for anything that was done to you, supposedly, correct?

"A: I could have went.

"Q: But, you didn't go, right?

"A: No.

"Q: You didn't go up to the police and show them your injuries, did you?

"A: No.

"Q: And, you never told anyone what happened until today in court?

"A: That's correct.

"Q: Other than your attorney, correct?

"A: That's correct."

After the presentation of evidence, the prosecutor made the following comments as a part of his closing argument: "Mr. Rinaldi was inconsistent at times in different statements. At least he spoke to the police. At least he spoke to them and even gave them a statement, more than anyone else did for the defense in this case . . . . [The defendant] never gave a statement. He can change his story, and I can't show it's inconsistent except for what he told Mr. Penperton . . . . "

The defendant contends that these questions and remarks constituted impermissible comment on his failure to speak to the police prior to trial thereby constituting an infringement on his fundamental right to silence as guaranteed by the fifth and fourteenth amendments to the United States constitution.[4]

It is "fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial. *Doyle* v. *Ohio,* 426 U.S. 610, 617–18, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976)." *State* v. *Morrill,* 197 Conn. 507, 536, 498 A.2d 76 (1985). Prosecutorial comment on the defendant's prearrest silence, however, can be used for purposes of impeachment and does not create a constitutional violation. *Jenkins* v. *Anderson,* 447 U.S. 231, 235, 100 S. Ct. 2124, 65 L. Ed. 2d 2486 (1980); *State* v. *Leecan,* 198 Conn. 517, 521, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986). Insofar as the state, in the present case, has used the defendant's prearrest silence to impeach the credibility of his self-defense claim, there is no error.

Our inquiry does not end here, however, because the prosecutorial comment subject to our review involves both prearrest and postarrest silence. In the past, we

---

[4] The defendant makes no claim that the prosecutorial comment violated any provision of the state constitution and, accordingly, our review is limited to the federal constitution standards.

have held that a prosecutor's argument to the jury that the defendant had an obligation to inform the police of certain inaccuracies in his *postarrest* statement constituted error. *State* v. *Apostle,* 8 Conn. App. 216, 226, 512 A.2d 947 (1986). In this case, we find that the prosecutor's question to the defendant, "You never told anyone what happened until today in court?" and his comment to the jury during closing argument that "[the defendant] never gave a statement" were improper. We must now determine "whether it is clear beyond a reasonable doubt that the jury would have returned a guilty verdict without the impermissible questioning and impermissible comment. See *State* v. *Morrill,* supra, 539." *State* v. *Apostle,* supra, 227.

Under limited circumstances, the state's use of a defendant's postarrest silence does not constitute reversible error. Such is the case with the present appeal. We first note that the state's reference to the defendant's postarrest silence was limited. The principal use of the defendant's pretrial silence was for impeachment purposes. This was the attack that struck at the heart of the defendant's self-defense claim. In comparison, we cannot say that the prosecutor's isolated reference to the postarrest silence, when viewed in the context of the entire proceeding, denied the defendant any constitutional right attendant to a fair trial.

It is clear from the record that, notwithstanding the reference to the defendant's postarrest silence, there was overwhelming evidence from which the jury could have reasonably found the defendant guilty of assault in the first degree. In addition, the jury obviously concluded that the defendant's exculpatory story was frivolous and the evidence produced at trial wholly supports that conclusion. Although a finding of harmless error in a situation where the state improperly comments upon the defendant's postarrest silence is the excep-

tion to the rule, we find that the present case fits the exception rather than the rule. *State* v. *Morrill,* supra, 539. From our careful review of this record, we conclude that, absent this impermissible comment, it is clear beyond a reasonable doubt that the jury would have returned a verdict of guilty.

## III

The defendant's next claim is that the trial court erred in admitting evidence of a pretrial identification of the defendant. Prior to the trial, the defendant unsuccessfully moved to suppress a pretrial identification of the defendant made by Janice Jones, a witness to the assault. Although identity was not an issue at trial, the defendant urges that we find that the procedure used by the police was so impermissibly suggestive that it resulted in an unreliable out-of-court identification which tainted any subsequent in-court identification. We disagree.

The following facts are relevant to our discussion of this claim. Janice Jones, who knew both the defendant and his fiancee, was arrested on an unrelated charge in December of 1985. While in custody, she voluntarily told the police that the defendant was the person who stabbed Rinaldi during the November 28, 1985 incident. The police then compiled a photographic array. The array consisted of a folder containing nine photos, including a picture of the assailant whom Jones had previously identified as "Boone." Jones was then told to "pick out Boone"; the police never suggested that Jones pick out a particular photograph. Thereafter, Jones selected a photograph of the defendant and later made an in-court identification of the defendant at trial.

The standard for review of a challenge to an identification procedure has been noted recently by our Supreme Court: "We have recently reiterated that ' "[i]n determining whether identification procedures

violate a defendant's due process rights, the required inquiry is made on an ad hoc basis and is two-pronged: first, it must be determined whether the identification procedure was unnecessarily suggestive, and second, if it is found to be so, it must be determined whether the identification was nevertheless reliable based on an examination of the 'totality of the circumstances.' " ' *State* v. *Ramsunder,* 204 Conn. 4, 10, 526 A.2d 1311 (1987), quoting *State* v. *Theriault,* 182 Conn. 366, 371–72, 438 A.2d 432 (1980) . . . . ' " ' " "A defendant who moves to suppress identification evidence bears the initial burden of proving that the identification resulted from an unconstitutional procedure." ' . . ." ' *State* v. *Cubano,* [203 Conn. 81, 93, 523 A.2d 495 (1987)] . . . . To prevail in his claim 'the defendant must demonstrate that the trial court erred in *both* of its determinations regarding "suggestiveness" and "reliability" of identifications in the totality of the circumstances.' (Emphasis in original.) *State* v. *Hinton,* [196 Conn. 289, 292–93, 493 A.2d 836 (1985)]." (Citations omitted.) *State* v. *Mayette,* 204 Conn. 571, 581, 529 A.2d 673 (1987).

Under the facts of this case, we conclude that the defendant has failed to show that the challenged procedure "give[s] rise to a very substantial likelihood of irreparable misidentification." *State* v. *Fullwood,* 193 Conn. 238, 243–44, 476 A.2d 550 (1984). The presentation to a witness of a photographic array, including a photo of the defendant, does not constitute an impermissibly suggestive procedure " 'in the absence of any unfairness or other impropriety in the conduct of the exhibit.' " *State* v. *Boscarino,* 204 Conn. 714, 726, 529 A.2d 1260 (1987), quoting *State* v. *Hafner,* 168 Conn. 230, 237, 362 A.2d 925, cert denied, 423 U.S. 851, 96 S. Ct. 95, 46 L. Ed. 2d 74 (1975); see *State* v. *Pollitt,* 205 Conn. 132, 162, 531 A.2d 125 (1987). Based on the totality of the circumstances, the pretrial identification

procedures were neither unnecessarily suggestive nor unreliable. See *State* v. *Ramsundar,* supra, 10.

## IV

The next claim of error is based on the trial court's denial of the defendant's motion for judgment of acquittal. The defendant contends that the state failed to introduce sufficient evidence (1) to prove that the defendant had the requisite intent to sustain the assault conviction, and (2) to disprove the defendant's defenses beyond a reasonable doubt. We disagree.

"In reviewing allegations of insufficient evidence, we will not evaluate the evidence nor will we resolve questions of the credibility of the witnesses. *State* v. *McCarthy,* 197 Conn. 166, 179, 496 A.2d 190 (1985). We review the evidence in the light most favorable to sustaining the jury's verdict. *State* v. *Dickson,* 10 Conn. App. 462, 464, 523 A.2d 935 (1987)." *State* v. *Hendrickson,* 12 Conn. App. 662, 670, 533 A.2d 894 (1987); see also *State* v. *Artis,* 198 Conn. 617, 621, 503 A.2d 1181 (1986).

General Statutes § 53a-59 (a) (1) requires that the state prove that the defendant, (1) with intent to cause physical injury, (2) to another person, (3) caused such injury to such person, (4) by means of a deadly weapon or dangerous instrument. With respect to these statutory elements of the crime of assault in the first degree, the defendant argues that the state did not prove the element of intent.

Intent is a question of fact for the jury and may be proven by circumstantial evidence and inferences. *State* v. *Castillo,* 11 Conn. App. 621, 626, 528 A.2d 860, cert. denied, 205 Conn. 804, 531 A.2d 938 (1987). From the evidence produced at trial, the jury could have reasonably found that the defendant was the aggressor who, armed with a knife, intentionally stabbed Rinaldi and

caused him serious physical injury rather than the innocent victim the defendant claimed to be at trial.

Furthermore, we find that the defendant's argument that the state failed to disprove his defenses beyond a reasonable doubt to be without merit. Whether there was any basis for these defenses "depends in the first instance on the credibility of the defendant and of his witnesses." *State* v. *Gooch,* 186 Conn. 17, 26, 438 A.2d 867 (1982). The jury found the defendant guilty of assault in the first degree; it is apparent from this verdict that the jury found no factual basis for the defendant's defenses. Absent any factual basis for justification, the evidence against the defendant was overwhelming. The trial court properly denied the motion for judgment of acquittal.

V

The next assignment of error involves the trial court's denial of the defendant's motion for mistrial. The defendant contends that certain judicial misconduct and bias denied him his constitutional right to a fair trial. The allegations of judicial misconduct and bias take three forms: (1) laughter heard from the bench on four occasions during cross-examination by defense counsel; (2) the questioning of a state witness from the bench; and (3) allowing the prosecutor to ask leading questions on direct examination.

We find that the trial court's denial of the defendant's motion for mistrial did not constitute an abuse of discretion. " 'The general rule in this state is that a mistrial should be granted only when it is apparent to the court that some occurrence during the trial has so prejudiced a party that he can no longer receive a fair trial . . . . ' *State* v. *Fleming,* 198 Conn. 255, 264, 502 A.2d 886 (1986)." *State* v. *Elliott,* 8 Conn. App. 566, 576, 513 A.2d 1285 (1986). Our Supreme Court has noted that "the judge is more than a mere moder-

ator of the proceedings. It is his responsibility to have the trial conducted in a manner which approaches an 'atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding.' *Glasser* v. *United States,* 315 U.S. 60, 82, 62 S. Ct. 457, 86 L. Ed. 680 [1942]; *Quercia* v. *United States,* 289 U.S. 466, 469, 53 S. Ct. 698, 77 L. Ed. 1321 [1933]." *State* v. *Echols,* 170 Conn. 11, 13, 364 A.2d 225 (1975).

Our review of the transcript reveals that the defendant twice brought the matter of the trial court's laughter or "snickering" to the court's attention. On both occasions, the court neither denied nor acknowledged the allegations that it had engaged in such conduct but asserted that the court had no bias against the defendant.[5] The transcript is silent with respect to any laughter or snickering by the trial court. It does reveal an ongoing tension between the trial court and the defense counsel throughout the trial. On the basis of our care-

---

[5] During the cross-examination of Rinaldi, the following exchange took place:

"[Defense Counsel]: Maybe the court will indulge me with the explanation of what the snickering is for. I apologize. I heard it. I assume everybody else did, too.

"The Court: I'll disregard that comment at this time."

Again, during the defense counsel's motion for a mistrial, the counsel and the court addressed each other as follows:

"[Defense Counsel]: I take umbrage with the fact that my client is not being given his right to a fair trial here. I don't like snickering . . . .

"The Court: In terms of a snicker that occasioned your question of this court, perhaps if you read the record, after hearing the part of the testimony that was introduced through the state's witness on direct and then listen to your questions on the voir dire and on the photograph and the difference between the voir dire on the two photographs, perhaps the record would even note it, but I don't think that anything that this—this court certainly has no opinion whatsoever at this point about this case, and it has protected your client's interests in every conceivable way. If you look at what the record discloses in terms of the court's ruling on the various motions that you filed this morning, I can hardly see how you could have a complaint . . . . I don't think there is anything in the record here that shows any bias on the court's part. And the court certainly doesn't have any . . . ."

ful review of the transcript, however, we cannot conclude that the defendant has shown that the trial court's demeanor or conduct denied him a fair trial. "The defendant is entitled to a new trial . . . only where he can show that prejudice resulted from the court's actions. See *State* v. *Echols*, supra, 16." *State* v. *Gordon*, 197 Conn. 413, 425, 504 A.2d 1020 (1985).

The defendant also contends that the trial court demonstrated judicial bias by questioning a state's witness and by permitting the prosecutor to ask leading questions.

The defendant's failure to raise any objection to the trial court's inquiry of Detective Stephan Patten normally would preclude appellate review. Practice Book §§ 288, 4185. We will, however, invoke our authority to provide review under the *Evans* bypass rule because a claim of judicial misconduct is involved. See *State* v. *Day,* 12 Conn. App. 129, 135, 529 A.2d 1333 (1987).

After direct and cross-examination of Patten, the trial court inquired of the witness: "In terms of the high prostitution area, what hours do [prostitutes] normally work?" This question arose after the following line of questioning by defense counsel regarding the area of the assault: "[Defense Counsel]: Now, sir, you have been in that area quite a while. You have been on the beat in that area at least nine years, is that not correct?

"Det. Patten: Yes, I have.

"Q: Is that not a high prostitution area?

"A: Yes, it is."

The trial court allowed this line of questioning over objection by the state. The defendant now contends on appeal that the trial court's question was prejudicial to him because it allowed the jury to infer that the judge agreed with the state's theory that the victim was "set up" for a robbery. We disagree.

It is clear that a trial judge may question witnesses "with circumspection" to clarify the testimony of the witness; see *State* v. *Mack,* 197 Conn. 629, 641, 500 A.2d 1303 (1985); *State* v. *Day,* supra, 129; and "to bring the facts out more clearly." *Goggins* v. *Fawcett,* 145 Conn. 709, 713, 147 A.2d 187 (1958). There is absolutely no basis, from our review, to conclude that the court took a position of advocacy or otherwise abused its discretion by posing the subject question.

Finally, the defendant claims that the trial court demonstrated judicial bias by allowing the prosecutor to ask leading questions during the direct examination of the victim, Rinaldi. We find this claim to be wholly without merit.

While it is true that the prosecutor often attempted to lead this witness, it is equally true that the transcript is replete with judicial warnings and rulings that curbed the attempts to lead the witness. We are convinced from our review of this transcript that the trial court maintained an atmosphere of fundamental fairness and that the court's rulings exhibited no judicial bias toward any party. The trial court did not err in denying the defendant's motion for mistrial.

## VI

The defendant's next claim of error is that he was denied a fair trial because of prosecutorial misconduct. The defendant claims that the prosecutor's final argument was improper in two ways. First, he claims that the prosecutor impermissibly commented upon the defendant's pretrial silence, and, second, that the prosecutor asserted his personal belief in the lack of veracity of certain witnesses. The defendant claims that the issue is reviewable, even though not raised at trial, because it involves a fundamental due process right to a fair trial. See *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). We agree and will review under the

*Evans* bypass rule because the record supports the defendant's claim that a fundamental constitutional right is involved; the duty of the prosecutor to avoid reprehensible conduct which would deny the defendant a fair trial. See *State* v. *Binet,* 192 Conn. 618, 629, 473 A.2d 1200 (1984).

With respect to the first of the defendant's claims of prosecutorial misconduct, we note that we have already dealt with the claim of improper reference to the defendant's pretrial silence in our discussion of the defendant's second claim of error. Because that discussion is dispositive of the first part of the present claim, we need not repeat it. We next turn to the second part of the defendant's claim which involves the prosecutor's alleged challenge to the veracity of certain witnesses.

"When a verdict is challenged on the basis of the prosecutor's allegedly prejudicial remarks, the defendant bears the burden of proving the remarks prejudicial in light of the whole trial. 'The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct.' *State* v. *Binet,* 192 Conn. 618, 628, 473 A.2d 1200 (1984)." *State* v. *Floyd,* 10 Conn. App. 361, 364, 523 A.2d 1323, cert. denied, 203 Conn. 809, 525 A.2d 523 (1987). It is the prosecutor's duty to see that justice is done and he must refrain from diverting the jury's attention from their conclusions on the evidence actually presented at trial. *State* v. *Couture,* 194 Conn. 530, 564, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985).

At the close of the evidence in this disharmonious trial, both counsel launched into zealous closing arguments. The prosecutor told the jury: "The defendant, I would submit to you, never told the truth in this court-

room or outside of this courtroom," and "[Defense Counsel's] job is difficult because he is putting people on the stand who are not telling the truth." In regard to another defense witness, the prosecutor commented: "I would not trust Mr. Holmes. I think all of you know what kind of person he was. And his testimony, I would submit to you, is not believable because of the kind of person he is."

Stating a personal belief in the lack of the credibility of a witness is improper and beyond the parameters of legitimate argument. *State* v. *Williams,* 204 Conn. 523, 529 A.2d 653 (1987); *State* v. *Floyd,* supra, 365. We recognize that " 'the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument.' " *State* v. *Magnotti,* 198 Conn. 209, 220, 502 A.2d 404 (1985), quoting *State* v. *Laudano,* 74 Conn. 638, 646, 51 A. 860 (1902). In the present case, we find that the prosecutor's remarks were improper, but our inquiry does not end here. We must determine whether, in the context of the entire trial, the impropriety was so egregious as to deny the defendant a fair trial. The defendant bears the burden of demonstrating that, in light of the entire proceeding, the remarks denied him a fair trial. *State* v. *Williams,* supra; see also *State* v. *Doehrer,* 200 Conn. 642, 654, 513 A.2d 58 (1986).

We first note that the prosecutor was not alone in challenging the credibility of witnesses. The defendant's counsel, during closing arguments, denounced certain state witnesses as liars on no less than three occasions. In reviewing the prejudicial effect of the prosecutor's comments, we must examine the likely impact of the challenged remarks, the frequency of the remarks, and the weight of all trial evidence. *State* v. *Couture,* supra, 562–63. Matched against these standards, we conclude that while the remarks were

improper and "may have been prejudicial in isolation, the defendant has not proved that [they] denied him the right to a fair trial." *State* v. *Floyd,* supra, 365–66.

Furthermore, the trial court cautioned the jury that the comments of the lawyers were not evidence and that the jurors were "not [to] consider them in deciding what the facts are." "Defense counsel did not object or except to this charge or claim that it was inadequate to offset the prosecutor's remarks. We conclude that the prosecutor's remarks were not so prejudicial as to render the curative instruction ineffective. See *State* v. *Couture,* supra, 562." *State* v. *Floyd,* supra, 366.

## VII

The next claim of error is that the trial court's instructions to the jury violated the defendant's right to a fair trial. The defendant makes a wholesale attack on the jury instructions, claiming that the court erred by not instructing the jury as the defendant requested with respect to the following: (1) the defense of duress; (2) the burden of proof; (3) the court's neutral role at trial; (4) the weight to be given each witness' testimony; (5) the jury's evaluation of the defendant's testimony; (6) the defense of a third party as a part of the state's burden of proof; and (7) the definition of the use of deadly force.

The defendant seeks review under the *Evans* bypass rule because he neither objected to nor excepted to those allegedly erroneous sections of the charge as given. Pursuant to our recently clarified formulation for *Evans* review, we first determine whether the defendant's claim is reviewable by asking two questions: (1) does the defendant raise an issue which, by its terms, implicates a fundamental constitutional right; and (2) does a limited review of the record show that the defendant's claim is truly of constitutional proportions and not simply characterized as such by the

defendant? *State* v. *Foshay,* 12 Conn. App. 1, 23, 530 A.2d 611, cert. granted, 205 Conn. 813, 532 A.2d 587 (1987); *State* v. *Newton,* 8 Conn. App. 528, 531, 523 A.2d 1261 (1986).

Although the defendant wraps this claim in the language of due process, "[o]ur limited review of the record discloses . . . that the defendant's claim is not truly of constitutional proportions, but is simply characterized as such by him." *State* v. *Foshay,* supra, 23. Earlier in this opinion, we have dealt with the defendant's unsuccessful claim that he was denied a fair trial by the court's refusal to give a jury instruction on the defense of duress. We need not repeat that discussion here. The only other claim of substance is that regarding the court's definition of the use of deadly force. While it is arguable that the court improperly limited the jury's consideration of deadly force in one of its statements,[6] it is abundantly clear from the record that the concept was more than adequately defined and clarified during the remainder of the charge.[7] Viewing the charge as a whole, we do not conclude that it is reasonably possible that the jury was misled. *State* v. *Jones,* 193 Conn. 70, 90, 475 A.2d 1087 (1984).

---

[6] In the midst of its instruction on the use of deadly force, the trial court stated that "[t]he degree of force used must be reasonable, but deadly force may not be used to counter perceived deadly force."

[7] The remainder of the court's charge on the use of deadly force reads as follows: "The use of deadly force is reasonable only to resist a threat of death or serious physical harm.

"A defendant claiming a justification of self-defense is permitted to use deadly force in two broad circumstances. He may justifiably use deadly force only if he reasonably believed that the other person was, one, using or about to use deadly physical force, or, two, inflicting or about to inflict great bodily harm.

"The law does not encourage the use of deadly force, and in most circumstances, a person must retreat from the perceived harm if he is able to do so with complete safety.

"Three circumstances exist in which a defendant is not required to retreat. The defendant is not required to retreat, one, if he is in his home or dwelling; two, is in his place of work and not the initial aggressor, or, three,

With respect to the other claims of instructional error, a refusal to charge in the exact words of a request is not error if the requested charge is given in substance. *State* v. *Shindell,* 195 Conn. 128, 143, 486 A.2d

if he is a peace officer or a private person assisting such officer at his direction and acting pursuant to Section 53a-22. In such cases, although the defendant need not retreat, he is still required to use reasonable force.

"If the assailant attempts to flee, thereby removing the threat of harm, then the defendant is not allowed to use deadly force, either to regain property which may have been taken, or in retaliation for any harm which may have been inflicted.

"Two other situations exist which make the use of deadly force unjustified. One, if the assailant's conduct appears motivated by his claim to property which the defendant possesses, and the defendant knows that if he surrendered the property that the assailant will flee without harming him, then the defendant may not use deadly force, but must surrender the property. Two, if a defendant is faced with deadly force in the course of performing an act which he is not required to perform, if he can remove this threat by ceasing that activity he may do so and may not use deadly force.

"For example, if the defendant stumbles upon a store being burglarized by armed robbers and the assailants tell him to leave or he will be shot, he may not use deadly force in response to this threat, since he is not obligated by law to protect the premises or thwart the robbers.

"A police officer, or store guard, however would be obligated by law to protect the premises and could use deadly force whether or not they are given the choice of leaving. . . .

"[L]et me read it right from the book—and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is, one, using or about to use deadly physical force, or, two, inflicting or about to inflict great bodily harm.

"Notwithstanding the provisions of subsection a,—and this is subsection b—a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating, except that the actor shall not be required to retreat if he is in his dwelling, as defined in Section 53a-100, or place of work and was not the initial aggressor, or if he is a peace officer or a private person assisting such peace officer at his direction, and acting pursuant to Section 53a-22, or, two, by surrendering possession of property to a person asserting a claim of right thereto, or, three, by complying with a demand that he abstain from performing an act which he is not obliged to perform.

"So, if you find that there was deadly physical force used upon another person, there is a requirement that the person claiming justification must retreat, in effect, avoid the necessity of using such force with complete safety."

637 (1985). The failure of the court to charge as requested does not amount to a claim of constitutional proportions. The defendant has failed to satisfy the requirements for full *Evans* review because his constitutional claim is not adequately supported by the record. *State* v. *Huff,* 10 Conn. App. 330, 333–34, 523 A.2d 906 (1987).

## VIII

The defendant's final claim is that the trial court erred in finding a probation violation based on the conviction for assault in the first degree. On October 3, 1986, the defendant was sentenced for the first degree assault of Ronald Rinaldi. The court sentenced the defendant to a sentence of eighteen years. On January 7, 1987, the court held a probation revocation hearing and found that the defendant had violated his 1984 probation under General Statutes § 53a-32.[8] The court revoked the probation and sentenced the defendant to a term of four years to run consecutively to the defendant's eighteen year term. The defendant contends that we must set aside the probation violation because the underlying assault conviction resulted from an erroneous and unfair trial. In addition, the defendant claims that the sentence for the probation violation was an illegal sentence. The defendant's claims are wholly without merit. "We recognize that a trial court has very broad discretion in imposing any sentence within the statutory limits; see *State* v. *Collette,* 199 Conn. 308, 320, 507 A.2d 99 (1986); *State* v. *Huey,* 199 Conn. 121, 126, 505 A.2d 1242 (1986) . . . ." *State* v. *Elliott,* 8 Conn. App. 566, 575, 513 A.2d 1285 (1986). All sentences were properly imposed and in accordance with

[8] On August 30, 1984, the defendant received a sentence of four years, suspended, and five years probation as a result of a plea of guilty to the charge of burglary in the second degree in violation of General Statutes § 53a-102.

statutory requirements, and, in addition, we have concluded that the defendant received a fundamentally fair trial.

There is no error.

In this opinion the other judges concurred.