STATE OF CONNECTICUT *v.* GERALD W. MUCHA
(AC 32395)

Bear, Sheldon and Peters, Js.

Argued April 16—officially released July 31, 2012

*James B. Streeto*, assistant public defender, for the appellant (defendant).

*Ronald G. Weller*, senior assistant state's attorney, with whom, on the brief, were *David S. Shepack*, state's attorney, and *Cynthia Palermo*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SHELDON, J. The defendant, Gerald W. Mucha, appeals from the judgment of conviction, rendered against him following a jury trial, of one count of operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a (a) (1).[1] On appeal, the defendant claims that: (1) the trial court erred in denying his motion to voir dire the jurors concerning a newspaper article that was published during trial; (2) the trial court erred in denying his motion to suppress the statements he made to state troopers at the scene of the automobile accident which led to his arrest in this case; and (3) improprieties in the prosecutor's rebuttal closing argument deprived him of his due process right to a fair trial.[2] We disagree and, thus, affirm the judgment of the trial court.

---

[1] General Statutes § 14-227a (a) (1) provides in relevant part: "Operation while under the influence or while having an elevated blood alcohol content. No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle (1) while under the influence of intoxicating liquor or any drug or both . . . ."

[2] The defendant also claims that the court erred in denying his challenges for cause of jurors who ultimately were excused from service. The defendant conceded in his brief to this court that he "exhausted his peremptory challenges, but did not ask for more, and no juror was seated who would have been challenged if the defendant ha[d] retained more peremptory challenges." On the basis of these concessions, the defendant acknowledges that our analysis is constrained by our Supreme Court's holdings in *State* v. *Ross*, 269 Conn. 213, 849 A.2d 648 (2004), and *State* v. *Esposito*, 223 Conn. 299, 613 A.2d 242 (1992). In *Ross*, our Supreme Court concluded that "because the defendant did not seek an additional peremptory challenge to exercise against a specific juror who ultimately served on the jury, even if it is assumed that the trial court improperly denied one or more of the defendant's for cause challenges, any such impropriety necessarily was harmless . . . ." *State* v. *Ross*, supra, 230. It is elemental that this court, as

The jury reasonably could have found the following relevant facts. On June 26, 2008, Trooper Michael Burke of the Connecticut state police was called to an accident scene at 387 Scoville Hill Road in Harwinton. Burke determined that an automobile driven by Julie Moore had rear-ended the defendant's parked automobile at that location. He thus concluded that Moore was at fault for the accident and ticketed her accordingly. Burke testified that during his investigation, while speaking with the defendant, he noted that the defendant had an odor of alcohol about him, a disheveled appearance and glassy, bloodshot eyes. Suspicious that the defendant, who had just driven his automobile to the location where Moore struck it, may have been operating under the influence of intoxicating liquor, Burke asked another state trooper, Shawn Prusinowski, to stay with the defendant during the accident investigation.

Near the end of the accident investigation, Burke questioned the defendant as to whether he had been driving under the influence of intoxicating liquor. When asked if he had consumed alcohol that day, the defendant answered in the affirmative and indicated that he started drinking between 9:30 and 10 a.m. that morning.[3] Burke then asked the defendant to perform three field

an intermediate appellate tribunal, is bound by the precedent set forth by our Supreme Court. See, e.g., *Stuart* v. *Stuart*, 297 Conn. 26, 45–46, 996 A.2d 259 (2010) ("it is manifest to our hierarchical judicial system that this court has the final say on matters of Connecticut law and that the Appellate Court . . . [is] bound by our precedent"); *DePietro* v. *Dept. of Public Safety*, 126 Conn. App. 414, 422 n.3, 11 A.3d 1149 ("as an intermediate appellate body, we are not at liberty to discard, modify, reconsider, reevaluate or overrule the precedent of our Supreme Court"), cert. granted on other grounds, 300 Conn. 932, 17 A.3d 69 (2011) (appeal withdrawn June 26, 2012). We are constrained by *Ross* and *Esposito* and cannot overrule Supreme Court authority.

[3] It was disputed at trial whether the times of 9:30 and 10 referred to the morning or to the prior evening. Burke testified that, because the accident occurred in the afternoon, he assumed that the defendant was referring to the morning of that day. He thus never asked the defendant for clarification on this point.

sobriety tests: the horizontal gaze nystagmus test; the walk and turn test; and the one leg stand test. According to Burke, the defendant took and failed the first two tests but refused to take the third, claiming that he could not perform it because he had had surgery on both of his knees. On the basis of the defendant's appearance, statements and field sobriety test results, Burke arrested him for operating a motor vehicle while under the influence of intoxicating liquor and transported him to the state police barracks in Litchfield, where he was given his *Miranda*[4] warnings. There, after trying but failing to contact two attorneys by telephone, the defendant refused to take a Breathalyzer test.

The defendant was charged with operating a motor vehicle while under the influence of intoxicating liquor, in violation of § 14-227a (a) (1). Following a jury trial, the defendant was found guilty. The trial court subsequently imposed a total effective sentence of three years incarceration, execution suspended after eighteen months, followed by three years of probation.[5] This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the trial court erred in denying his motion to voir dire the jurors concerning a newspaper article that was published during trial. He contends that the trial court was required, when the article was brought to its attention, to inquire of the jurors as to their exposure to the article to determine if one or more of them had read and been tainted by it. We disagree.

---

[4] *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[5] The defendant also pleaded guilty to the second part of the information as a subsequent offender.

The following additional facts are relevant to this claim. On February 9 and 23, 2010, the parties engaged in voir dire of potential jurors. On both days, during its preliminary charge to the jury panel, the trial court informed the venirepersons that, if they were selected for the jury, they would be required to decide the case solely on the basis of the evidence, and thus that, "[i]f there is anything regarding this case on the radio, or television, or newspaper, you can't listen to it, watch it, or read it." On March 2, 2010, moreover—the first day of trial, when the state presented most of its witnesses—the court gave the following cautionary instruction before releasing the jury for the day: "[S]tay away from the media. I know there's a proclivity among all of us, at least some of us at a certain age bracket and less so with those that are a little older to engage in that. And it's important that you stay away from anything of that nature and you know what that is, the blogs, as I mentioned in my early instructions, and anything to do with blogging or any kind of e-mailing or any of the Facebook things or any of those media. Please do not engage in that."

On the next day of evidence, March 4, 2010, defense counsel moved the court to voir dire the jurors regarding an article about the case that had appeared in the March 3, 2010 edition of the Waterbury Republican-American newspaper. The eleven paragraph article appeared on the front page of section B, the local news section, of the newspaper. The first eight paragraphs discussed the facts of the case and recited testimony from witnesses Burke, Prusinowski and Moore. The last three paragraphs discussed the plea agreements that the defendant had rejected, which would have involved incarceration and lifetime revocation of his license, as well as the defendant's criminal history, which included three prior arrests for and a pending out-of-state charge of operating under the influence. The information in

the last three paragraphs would not have been provided to the jury during trial.

In support of this motion, defense counsel argued that the article contained "information . . . that the jury is not supposed to have" about the case that had the "potential of infecting the jury." The defendant asked the court to inquire of the jurors if any of them had read any newspaper article or been exposed to any other media coverage about the case. Defense counsel presented no evidence that any juror had seen or read the article, or otherwise disregarded the court's instruction to "stay away from the media." In opposition to the defendant's motion, the state argued that any inquiry by the court was unnecessary because the jurors had been "warned . . . [and] admonished by Your Honor that they should not get involved or be subject to any media." The court ultimately denied the defendant's motion. At the end of the day, however, explaining to the jury that "there's been some print media publicity involving this case . . . [that] wasn't brought to my attention until today," the court instructed the jury "not to read any newspaper articles" and to avoid "anything of the print media or either by print in the sense of newspapers and/or things coming in by electronic media" concerning the case.

Before addressing the merits of the defendant's claim, we must set forth the applicable standard of review and identify the legal principles governing our analysis. "The law relating to alleged juror misconduct is well settled. . . . Jury impartiality is a core requirement of the right to trial by jury guaranteed by the constitution of Connecticut, article first, § 8, and by the sixth amendment to the United States constitution. . . . [T]he right to a jury trial guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors. . . . The modern jury is regarded as an institution in our justice system that determines the case solely on the

basis of the evidence and arguments given [it] in the adversary arena after proper instructions on the law by the court. . . .

"A court is required to conduct a preliminary inquiry, on the record, whenever it is presented with information *tending to indicate the possibility of juror misconduct or partiality.* . . . Any assessment of the form and scope of the inquiry that a trial court must undertake when it is presented with allegations of jury [bias or] misconduct will necessarily be fact specific. No one factor is determinative as to the proper form and scope of a proceeding. It is the trial court that must, in the exercise of its discretion, weigh the relevant factors and determine the proper balance between them. . . . Consequently, the trial court has wide latitude in fashioning the proper response to allegations of juror bias. . . . We [therefore] have limited our role, on appeal, to a consideration of whether the trial court's review of alleged jury misconduct can fairly be characterized as an abuse of its discretion. . . . Although we recognize that trial [c]ourts face a delicate and complex task whenever they undertake to investigate reports of juror misconduct or bias . . . we nevertheless have reserved the right to find an abuse of discretion in the highly unusual case in which such an abuse has occurred. . . . *Ultimately, however, [t]o succeed on a claim of [juror misconduct] the defendant must raise his contention of [misconduct] from the realm of speculation to the realm of fact.*" (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Camera*, 81 Conn. App. 175, 179–80, 839 A.2d 613, cert. denied, 268 Conn. 910, 845 A.2d 412 (2004).

In *State* v. *Merriam*, 264 Conn. 617, 674–75, 835 A.2d 895 (2003), our Supreme Court addressed the issue of prejudicial publicity and its effect on jury impartiality. In *Merriam*, "the defendant informed the court that two newspaper articles regarding the case had been

published . . . . The defendant characterized these articles as hav[ing] some detail in [them] that's rather disturbing . . . [and moved] that the trial court poll the jury to see if they [had] read anything in any local newspaper or anything about th[e] case and just warn them not to. The defendant, however, made no request that the court make any specific inquiry into whether any juror or jurors had read either of the two articles, and did not indicate that he had any reason to believe that any juror actually had seen one or both of the two articles.

"The trial court denied the defendant's request, noting that the jurors previously had been instructed to avoid media coverage of the case and that there was no indication that jurors had disregarded those instructions. The court further observed that the two articles identified by the defendant were brief and not notorious . . . [and] that, during the voir dire of prospective jurors, counsel had inquired of those prospective jurors whether they had had any exposure to the case, [to which] each such venireperson had answered in the negative." (Internal quotation marks omitted.) Id., 674. Against this background, our Supreme Court rejected the defendant's contention that the mere existence of the articles required the court to poll the jury "in light of the fact that the court previously had instructed the jurors . . . to avoid exposure to any media accounts of the case." Id., 675.

Subsequently, in *Kervick* v. *Silver Hill Hospital,* 128 Conn. App. 341, 18 A.3d 622, cert. granted, 301 Conn. 922, 22 A.3d 1279 (2011), this court addressed the issue of whether the trial court was required to conduct a preliminary inquiry of the jurors regarding their possible exposure to a newspaper article about the case. In *Kervick,* the newspaper article was published after the jury was impaneled but before the commencement of trial. Id., 345. Counsel requested that the court poll the jury

as to its exposure to the article to determine if any of them had read it and been influenced by it. The court denied the request. Id. On appeal, this court reversed the trial court's decision, distinguishing *Merriam* based on the following factors: "Importantly, at no time prior to publication of the article were the jurors in [*Kervick*] instructed by a judge to avoid media coverage of the ensuing trial. . . . Additionally, neither part[y's] counsel had the opportunity to question prospective jurors as to their exposure to the article, as the article had not yet been published at the time of voir dire. Unlike in *Merriam*, the article here is extensive, factually detailed and so overtly inflammatory that it is difficult to conceive how a juror would remain impartial if exposed to its contents. Moreover, [the plaintiff] . . . unlike the defendant in *Merriam*, requested that the court make the specific inquiry into whether any juror or jurors had read the article." (Citation omitted.) Id., 350.

Reading *Merriam* and *Kervick* together, we discern that the question of whether a trial court has abused its discretion by not canvassing jurors about their exposure to prejudicial publicity concerning a case on trial depends, in the first instance, upon two related inquiries. The first is whether it is likely that one or more jurors actually has been exposed to such prejudicial publicity. The second is whether it is likely that the ability of a juror, so exposed, to render a fair and impartial verdict in the case would be undermined. If the answers to these inquiries raise the defendant's contention of juror misconduct or partiality from the realm of speculation to the realm of fact, further judicial exploration of the issue clearly is warranted. In that event, whether failure to canvass the jurors about their possible exposure to the publicity in question constituted an abuse of discretion will depend upon the answers to two further inquiries. The first of these is whether and when the party claiming prejudice as a

result of the publicity asked the court to conduct the canvass. The second is whether other means for detecting exposure to the publicity or minimizing its impact, if any, were available to and/or used by the court.

As to the likelihood of juror exposure to the article in the present case, we first note that here, as in *Merriam* and *Kervick*, the defendant presented no evidence that any juror had read the article or even had come into possession of the newspaper in which it appeared. Rather, the defendant contends that the mere existence of the article in a locally available newspaper required the court to canvass the jury. We reject that contention for two reasons. First, here, as in *Merriam* but unlike in *Kervick*, the court previously had instructed the jurors on multiple occasions—on the day they were selected to serve on the jury and at the end of the first day of trial—to avoid exposure to all media accounts concerning the case. So instructed, the jurors fairly could be presumed, absent any evidence to the contrary, to have followed the court's instructions; see *State* v. *Copas*, 252 Conn. 318, 331, 746 A.2d 761 (2000); either by avoiding all intentional contact with newspapers following their selection as jurors or, at a minimum, by averting their eyes from any article appearing, from its headline, to concern a case on trial. This, of course, is the essential distinction between the *Merriam* and *Kervick* cases, for only in the former could the jury, having been instructed to avoid all media coverage of the case, be presumed not to have been exposed to the prejudicial publicity in question.

A second reason for concluding that the jurors in this case likely were not exposed to or affected by the newspaper article is that the prejudicial content of the article was not referenced in its headline or set forth in the text appearing on the first page of the section in which the article began. Instead, it appeared in the final

three paragraphs of the article on an inner page of the newspaper where a conscientious juror, seeking to follow the court's instructions, would not come upon it easily and would appreciate its harmful significance. A notorious article, prominently displayed in a local newspaper with a blaring headline, a boxed quotation or an accompanying photograph stating or displaying prejudicial information about a case reasonably might raise the possibility of juror exposure to such publicity and resulting taint to the realm of fact, at least to the point of requiring further judicial inquiry, regardless of whether the jury was instructed to avoid media coverage. In this case, however, as in *Merriam*, where the prejudicial content of the article was not so overtly and conspicuously published, there is no reason to believe that a diligent juror, attempting to follow the court's instructions to avoid all media coverage of the case, would ever be exposed to it.

Although we have no doubt at all that in a trial for the operation of a motor vehicle while under the influence of intoxicating liquor, evidence of a defendant's three prior arrests for that offense and his rejection of a plea agreement that would have required him to serve a jail sentence and suffer lifetime loss of his driver's license could be devastating, we cannot find that the court erred by failing to canvass the jurors as to whether they were exposed to such information in the article here at issue. Absent any reason to believe that any of the properly instructed jurors either had violated their oaths by reading the article or accidentally had come across it and been exposed to its prejudicial contents, the trial court had the discretion not to inquire of them as to such speculative exposure.[6]

---

[6] We note that during oral argument before this court, the defendant relied on the Second Circuit Court of Appeal's holding in *United States* v. *Lord*, 565 F.2d 831, 838–39 (2d Cir. 1977), for the proposition that the publication of the newspaper article alone was sufficient to warrant further inquiry by the court. We are not bound by the standard set forth in *Lord*, but instead

## II

The defendant also claims that the trial court erred in denying his motion to suppress the statements he made to investigating officers at the scene of the accident. Specifically, the defendant argues that those statements should have been suppressed because they were elicited from him by custodial interrogation before he was advised of his *Miranda* rights. The defendant filed his motion to suppress prior to the commencement of trial, claiming that his challenged statements had been made at a time when he did not feel free to leave and, thus, was effectively in police custody. The defendant argues that all of the statements he made on that occasion were the fruits of an unlawful custodial interrogation, having been obtained in violation of his *Miranda* rights. The court denied the defendant's motion from the bench, stating simply, without explanation, that it would admit the challenged statements.

During the pendency of this appeal, the defendant moved for articulation of the court's suppression ruling on five issues: (1) whether he was in custody at the accident scene; (2) whether he was subject to custodial interrogation at the scene; (3) whether he was told that he was free to leave; (4) whether his statements at the scene were compelled by the circumstances; and (5) whether admission of the defendant's statements was more probative than prejudicial. In response to these requests for articulation, the trial court filed a ruling in which it explained that it had denied the defendant's motion to suppress because the defendant's prearrest statements had not been obtained in violation of *Miranda*, as "the inquiry by the State Police officer at that stage was investigative in nature and not a 'custodial interrogation.' "

are constrained by the precedent of our own Supreme Court, as articulated in *State* v. *Merriam*, supra, 264 Conn. 674–75.

The defendant later filed a motion for review, arguing that, although the trial court's ruling indicated that it had denied his motion to suppress because it had found that he was not in custody at the time he made his challenged statements, the court's ruling did not address whether it found that, even though he was not in custody, the circumstances surrounding his prearrest statements were such as to compel him to disclose the information contained in those statements. In response to the defendant's motion for review, this court ordered the trial court to articulate points three, four and five. Thereafter, in a memorandum dated May 25, 2011, the trial court articulated its ruling on those points as follows.

As to the issue of the defendant's ability to leave the scene, the court explained that whether the defendant was told that he was free to leave "is not the test as to whether or not a defendant under suspicion of driving under the influence is in custody . . . . The fact that no one may have told him that he was free to leave the scene doesn't mean that he was not free or would not have had the ability and/or the volition to leave the scene of the accident. . . . The *Miranda* court distinguished in-custody police interrogation in a police-dominated atmosphere from routine on-scene investigatory information gathering. . . . 'General on-the-scene questioning of citizens in the fact finding process is not affected by our holding. . . . In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present.' *Miranda* v. *Arizona*, [384 U.S. 436, 477, 478, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)]." Applying those holdings to the present case, the court determined "that the defendant was not in custody during the time of his contact with Trooper Burke. The initial inquiry made of the defendant was consistent with routine type questions that would have been asked by a police officer assigned to an accident investigation."

As to whether the defendant's statements had been compelled, the court explained "that the defendant's responses, both verbal and by his actions to the police authorities, were not the product of a coercive environment, but were investigative police inquiries . . . [and] . . . in effect part of an on-going investigation in which the evidence gathering process was continuing . . . ." The court also explained: "The request to perform and the defendant's responses to those requests involving the field sobriety tests were a necessary part of the prearrest investigation. This court did not find that such actions by the police created an atmosphere which compelled the defendant to either state or do certain things which would lead to the police officer's conclusion that the defendant was under the influence of alcohol or drugs."

Finally, as to the issue of prejudice versus probative value, the court noted that the more damaging evidence against the defendant was his conduct at the scene, not his statements to the state police. Specifically, the court found that the defendant's prearrest appearance, actions, deportment and inability to perform field sobriety tests were all highly probative of being under the influence of intoxicating liquor, regardless of his statements.

"Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Beliveau*, 52 Conn. App. 475, 483, 727 A.2d 737, cert. denied, 249 Conn. 920, 733 A.2d 235 (1999). "We will not overturn the trial court's

factual finding that the defendant was not in custody unless it was clearly erroneous . . . but [we] will, however, carefully review the record to ascertain whether the trial court's finding is supported by substantial evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Rasmussen*, 225 Conn. 55, 76–77, 621 A.2d 728 (1993).

"Two threshold conditions must be satisfied in order to invoke the warnings constitutionally required by *Miranda*: (1) the defendant must have been in custody; and (2) the defendant must have been subjected to police interrogation." (Internal quotation marks omitted.) *State* v. *Tomasko*, 238 Conn. 253, 267, 681 A.2d 922 (1996). "A person is in custody only if, in view of all of the surrounding circumstances, a reasonable person would have believed he was not free to leave." (Internal quotation marks omitted.) *State* v. *Pinder*, 250 Conn. 385, 409, 736 A.2d 857 (1999). The "ultimate inquiry [therefore] is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." (Internal quotation marks omitted.) Id.

Our Supreme Court has held that the routine investigatory stage of a motor vehicle accident is a noncustodial situation, and thus that statements made by a defendant to a police officer in such circumstances are admissible regardless of whether the police officer gave the defendant his *Miranda* warnings. See *State* v. *Smith*, 174 Conn. 118, 120–21, 384 A.2d 347 (1977). This court, moreover, has concluded that conducting field sobriety tests does not place a suspect in custody for purposes of *Miranda*. See *State* v. *Gracia*, 51 Conn. App. 4, 17–18, 719 A.2d 1196 (1998); see also *State* v. *Beliveau*, supra, 52 Conn. App. 484–86.

In its articulation as to whether the defendant was in custody when he made his statements to state troopers at the scene of the accident, the court characterized

the defendant's interaction with the troopers as "routine on-scene investigatory information gathering," which did not place the defendant in custody. Given the factual circumstances of this case, we conclude that this finding was not clearly erroneous and was supported by substantial evidence. In support of this conclusion, we note that the investigation of the accident occurred outside of the defendant's residence and that the defendant's automobile had not been detained pursuant to a lawful stop. The troopers did not use or threaten the use of force against the defendant, or display their weapons. In addition, we note that the defendant was never handcuffed or otherwise restrained at the time that he voluntarily made the statements at issue. In short, the defendant was not in custody when he made his challenged statements to the state troopers at the scene of the accident.

### III

Lastly, the defendant claims that the state engaged in prosecutorial impropriety during its rebuttal closing argument to the jury, thereby depriving him of a fair trial. We conclude that, although one of the prosecutor's comments was improper, the defendant was not thereby deprived of his due process right to a fair trial.

After setting forth the applicable principles of law, we address each of the alleged improprieties in turn and then determine whether the incident found to constitute improper conduct deprived the defendant of a fair trial. "[I]n analyzing claims of prosecutorial [impropriety], we engage in a two step analytical process. The two steps are separate and distinct: (1) whether [impropriety] occurred in the first instance; and (2) whether that [impropriety] deprived a defendant of his due process right to a fair trial. Put differently, [impropriety] is [impropriety], regardless of its ultimate effect on the fairness of the trial; whether that [impropriety] caused

or contributed to a due process violation is a separate and distinct question that may only be resolved in the context of the entire trial . . . ." (Internal quotation marks omitted.) *State* v. *Luster*, 279 Conn. 414, 428, 902 A.2d 636 (2006).

"In examining the prosecutor's argument we must distinguish between those comments whose effects may be removed by appropriate instructions . . . and those which are flagrant and therefore deny the accused a fair trial. . . . Last, we note that [w]e do not scrutinize each individual comment in a vacuum, but rather we must review the comments complained of in the context of the entire trial. . . . It is in that context that the burden [falls] on the defendant to demonstrate that the remarks were so prejudicial that he was deprived of a fair trial and the entire proceedings were tainted." (Internal quotation marks omitted.) *State* v. *Quint*, 97 Conn. App. 72, 85–86, 904 A.2d 216, cert. denied, 280 Conn. 924, 908 A.2d 1089 (2006).

"In evaluating whether the [impropriety was so serious as to amount to a denial of due process], we consider the factors enumerated by [the] court in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987). . . . These factors include the extent to which the [impropriety] was invited by defense conduct or argument, the severity of the [impropriety], the frequency of the [impropriety], the centrality of the [impropriety] to the critical issues in the case, the strength of the curative measures adopted, and the strength of the state's case." (Citation omitted.) *State* v. *Warholic*, 278 Conn. 354, 360–61, 897 A.2d 569 (2006). Although a defendant need not object at trial to the alleged improprieties, nor seek review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), "the determination of whether a new trial or proceeding is warranted depends, in part, on whether defense counsel has made a timely objection to any [incident] of the prosecutor's

improper [conduct]. When defense counsel does not object, request a curative instruction or move for a mistral, he presumably does not view the alleged impropriety as prejudicial enough to seriously jeopardize the defendant's right to a fair trial." (Internal quotation marks omitted.) *State* v. *Warholic*, supra, 361.

### A

The defendant first claims that the prosecutor's statement during rebuttal closing argument that the defendant's case was "all based on opinion," while the state's case was "all based on evidence, testimonial evidence," was improper and deprived him of a fair trial. The state argues that the prosecutor's remark constituted fair argument because it was invited by defense counsel's repeated assertions that the state's case was devoid of any evidence and based solely on opinion. The state also argues that defense counsel's failure to object to the prosecutor's comment demonstrates its lack of impropriety. For the following reasons, we agree with the state.

During his closing argument, defense counsel repeatedly claimed that the state's case was based solely on opinion and was devoid of evidentiary support. At the beginning of his argument, defense counsel stated: "You've heard a lot of opinions about what happened. I want to draw your attention to that, specifically. You have opinions here. You have people that reach conclusions without a lot of facts and that, I think, is what the basis of the state's case is. Facts don't—opinions don't become facts just because they're repeated on a regular basis. There's insinuation. There's innuendo. You can't substitute any kind of opinion for evidence in a trial." At the end of his argument, defense counsel stated: "But, I think what you need to take a look at here, is that there's a lot of opinion. There aren't very many facts. There's barely any evidence. . . . Just

because the state says a crime happened and the police officers say he was intoxicated, he was drunk, doesn't make it a crime. You need some evidence. You need some proof. Opinion is not evidence. Opinion is not proof. And without proof, without—without—based just on the opinion, without proof, without evidence, I think you have to acquit."

In light of the foregoing argument, we conclude that the prosecutor was justified in countering that the state's case, not the defendant's, was based on evidence rather than opinion. It is not improper for a prosecutor appropriately to respond to statements made by defense counsel during the defendant's closing argument. See *State* v. *Brown,* 256 Conn. 291, 309, 772 A.2d 1107 ("[w]hen a prosecutor's allegedly improper argument is in direct response to matters raised by defense counsel, the defendant has no grounds for complaint" [internal quotation marks omitted]), cert. denied, 534 U.S. 1068, 122 S. Ct. 670, 151 L. Ed. 2d 584 (2001); see also *State* v. *Singh,* 259 Conn. 693, 721, 793 A.2d 226 (2002) ("it was not improper for the state's attorney to use the same rhetorical device employed by defense counsel to underscore its theory of the case"). As such, we agree with the state that the prosecutor's comment was a proper response to defense counsel's argument that the state's case was weak due to its reliance on opinion rather than evidence.

B

The defendant next challenges the prosecutor's comment during rebuttal closing argument that the issue in the case was "whether the [defendant] was sober when he was driving." The defendant claims that, by referring to the standard as one of sobriety rather than operation of a motor vehicle while under the influence of intoxicating liquor, the prosecutor mischaracterized the law. The state argues that the prosecutor's comment

must be viewed in the context of her entire argument, where she repeatedly explained to the jury that, to obtain a conviction, the state must prove that the defendant was "under the influence," which is the proper legal standard. The state also contends that the prosecutor's only reference to sobriety was not made when discussing the legal standard governing the case, but when discussing the irrelevant issue of who caused the accident that led to the defendant's arrest. Finally, the state notes that any potential prejudice arising from the prosecutor's reference to sobriety was cured by the court's instruction to the jury. For the following reasons, we agree with the state.

We recognize at the outset that, "because closing arguments often have a rough and tumble quality about them, some leeway must be afforded to the advocates in offering arguments to the jury in final argument. [I]n addressing the jury, [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument." (Internal quotation marks omitted.) *State* v. *Antonio A.*, 90 Conn. App. 286, 298, 878 A.2d 358, cert. denied, 275 Conn. 926, 883 A.2d 1246 (2005), cert. denied, 546 U.S. 1189, 126 S. Ct. 1373, 164 L. Ed. 2d 81 (2006). "[I]t does not follow [therefore] . . . that every use of rhetorical language or device [by the prosecutor] is improper. . . . The occasional use of rhetorical devices is simply fair argument." (Internal quotation marks omitted.) *State* v. *Ancona*, 270 Conn. 568, 594, 854 A.2d 718 (2004), cert. denied, 543 U.S. 1055, 125 S. Ct. 921, 160 L. Ed. 2d 780 (2005). In light of this standard, we conclude that the state's use of the term "sober" was not improper.

When examining the prosecutor's comment in the context of both parties' closing arguments, we note that it was made in response to defense counsel's comments,

which could also have been understood to reference an incorrect legal standard. Defense counsel stated in his argument that, "[e]ven though [Burke] thought [the defendant] was intoxicated, [he] cited Ms. Moore for the—for the violation causing the accident. He said in his report that the cause of the accident, the person at fault was Julie Moore. She was put completely at fault in this. There never has been any allegation that [the defendant] did anything other than try to turn into his driveway." In her rebuttal closing argument, the prosecutor responded to this argument as follows: "And what about the issue of the accident? The accident is not an issue, ladies and gentlemen of the jury. You are not here to decide who was at fault. We all know who was at fault, Ms. Moore. She was ticketed. She was cited. The issue here is, is whether the operator was sober when he was driving." The prosecutor's comments clearly were aimed at redirecting the jury's focus from responsibility for the automobile accident to the issue of whether the defendant had been operating under the influence of intoxicating liquor. As previously noted, it is not improper for a prosecutor appropriately to respond to statements made by defense counsel during the defendant's closing argument. See *State* v. *Brown*, supra, 256 Conn. 309.

We also note that after defense counsel objected to this statement as improper, the court gave the following curative instruction during its charge to the jury: "Sobriety or the lack thereof is not the standard." On the basis of our review of the court's entire charge to the jury wherein it repeatedly reminded the jurors that operation of a motor vehicle while under the influence of intoxicating liquor was the correct legal standard, we conclude that its instructions "sufficiently and forcefully directed the jury's attention to its obligation not to consider that argument." *State* v. *Lasky*, 43 Conn. App. 619, 629, 685 A.2d 336 (1996), cert. denied, 239

Conn. 959, 688 A.2d 328 (1997). The court also instructed the jury that it must base its decision on the evidence presented and that the arguments of counsel did not constitute evidence. In the absence of any indication to the contrary, we presume that the jury followed the instructions given to it by the court. *State* v. *Mills*, 57 Conn. App. 202, 212, 748 A.2d 318, cert. denied, 253 Conn. 914, 915, 754 A.2d 163 (2000). In addition, we note that, after the court instructed the jury, "[d]efense counsel did not object or except to this charge or claim that it was inadequate to offset the prosecutor's remarks." (Internal quotation marks omitted.) *State* v. *Boone*, 15 Conn. App. 34, 54, 544 A.2d 217, cert. denied, 209 Conn. 811, 550 A.2d 1084 (1988). Although we conclude that the prosecutor's comment was not improper, the unobjected-to instruction given to cure any potential prejudice arising from it was adequate for that purpose.

C

The defendant also claims that the prosecutor committed an impropriety during her rebuttal closing argument when she referred to Prusinowski, who had testified exclusively as a state trooper, as a "paramedic" and invoked his "specialized paramedic training" as a basis for concluding that the defendant was under the influence of intoxicating liquor. The state argues that because the prosecutor's references were based on evidence produced at trial, they were not improper. Moreover, the state contends that even if there was some minimal impropriety in this statement, the court's curative instruction to the jury alleviated any possible prejudice arising therefrom. For the following reasons, we agree with the state.

After both parties' closing arguments and the prosecutor's rebuttal argument, defense counsel objected to the aforementioned reference, arguing that such a characterization improperly gave the trooper "greater credibility." The court responded by giving the following

curative instruction to the jury: "[Y]ou've heard testimony from a state trooper who was also a paramedic. But you are to regard his testimony as that of a state police officer." Neither party took an exception to the instruction nor complained that it was insufficient to cause the jury to correctly assess the strength of the trooper's testimony.

We conclude that this instruction sufficiently and forcefully directed the jury's attention to its obligation not to consider that information. See *State* v. *Lasky*, supra, 43 Conn. App. 629. As previously noted, the court instructed the jury that it must base its decision solely on the evidence presented and that counsel's arguments did not constitute evidence. In the absence of an indication to the contrary, we presume that the jury followed the instructions given to it by the court. See *State* v. *Mills*, supra, 57 Conn. App. 212. In addition, we note that, after the court instructed the jury, "[d]efense counsel did not object or except to this charge or claim that it was inadequate to offset the prosecutor's remarks." (Internal quotation marks omitted.) *State* v. *Boone*, supra, 15 Conn. App. 54. Although we conclude that the prosecutor's comment was not improper, the unobjected-to instruction given to cure any potential prejudice arising from it was adequate for that purpose.

D

Finally, the defendant claims error in the prosecutor's comment during her rebuttal closing argument that the defendant's attempts to secure legal representation when he was asked to take a Breathalyzer test were indicative of his guilt. The challenged comments, which the state concedes to have been improper,[7] were as

[7] In its brief to this court, the state acknowledged that these statements, "taken in isolation," were improper because no negative inference should be drawn from a defendant's decision to consult an attorney. See *State* v. *Angel T.*, 292 Conn. 262, 278–86, 973 A.2d 1207 (2009).

follows: "But the question is, if he was sober, why would he need an attorney? If he were sober, why wouldn't he take the breath test? It's as simple as that."

Our Supreme Court has concluded that it is improper for a prosecutor to suggest that a defendant's retention of counsel is inconsistent with his or her innocence. See *State* v. *Angel T.*, 292 Conn. 262, 286, 973 A.2d 1207 (2009). Accordingly, we conclude that the prosecutor's comment tying the defendant's need for a lawyer to his probable guilt improperly encouraged the jury to draw an adverse inference against him on the basis of his attempted exercise of his constitutional right to counsel.

Having concluded that the comment was improper, we must next decide if it was so prejudicial as to deny the defendant his due process right to a fair trial. "In other words, we must decide whether the sum total of [the prosecutor's] improprieties rendered the defendant's [trial] fundamentally unfair. . . . The question of whether the defendant has been prejudiced by prosecutorial [improprieties] . . . depends on whether there is a reasonable likelihood that the jury's verdict would have been different absent the sum total of the improprieties." (Internal quotation marks omitted.) *State* v. *Bermudez*, 274 Conn. 581, 599, 876 A.2d 1162 (2005). We conclude that the prosecutorial impropriety did not deprive the defendant of his right to a fair trial.

As we have stated, our inquiry into whether the defendant has been prejudiced by prosecutorial impropriety is guided by an examination of the factors enumerated by our Supreme Court in *State* v. *Williams*, supra, 204 Conn. 540. The first factor for consideration is the extent to which the impropriety was invited by defense conduct or argument. Id. The state contends that defense counsel invited the prosecutor's comments, at least to some extent, by arguing that the defendant

refused the Breathalyzer test because he could not secure legal representation, not because he was under the influence of intoxicating liquor. The state argues that the prosecutor was entitled to challenge this inference. In his closing argument, defense counsel sought to explain the defendant's refusal to submit to a breath test on the basis of his inability to contact and consult with legal counsel: "At that point," counsel argued, "he thought and then said, I'm—I won't do it. It wasn't like he just shut down. It wasn't like he was refusing to [do] this. He just wanted to get some—he just wanted to get some advice. He didn't refuse off the bat. He wanted to get some advice before he decided what to do on this thing. And discretion being the better part of valor sometimes, he decided not to test." We conclude, however, that the aforementioned remarks by defense counsel, which merely asserted that the defendant wished to consult with counsel before agreeing to take the Breathalyzer test, did not invite the prosecutor's remarks. A proper responsive argument asking the jurors to draw an inference of guilt from the defendant's refusal to submit to the test could easily have been made without asking jurors to draw an inference of guilt based on the defendant's attempted exercise of his right to counsel.

Turning to the second factor, namely, the severity of the impropriety; *State* v. *Williams*, supra, 204 Conn. 540; the state contends that the defendant's failure to object, much less to move for a mistrial or to seek a curative instruction in response to the prosecutor's challenged comment, belies his contention on appeal that the impropriety was so egregious as to constitute a due process violation. In response, the defendant contends that the impropriety is severe because it was not invited by defense conduct. "[W]hen considering whether prosecutorial [impropriety] was severe, this

court consider[s] it highly significant that defense counsel failed to object to any of the improper remarks, request curative instructions, or move for a mistrial. . . . A failure to object demonstrates that defense counsel presumably [did] not view the alleged impropriety as prejudicial enough to jeopardize seriously the defendant's right to a fair trial." (Internal quotation marks omitted.) *State* v. *Angel T.*, supra, 292 Conn. 289. Because the defendant failed to object or to seek curative measures at trial, we agree with the state's contention that the impropriety was not particularly severe.

Defense counsel's failure to object at trial, however, is "not by itself fatal to a defendant's claim . . . ." (Internal quotation marks omitted.) *State* v. *Ritrovato*, 280 Conn. 36, 68, 905 A.2d 1079 (2006). Therefore, we turn to the third *Williams* factor, namely, the frequency of the impropriety. *State* v. *Williams*, supra, 204 Conn. 540. Having reviewed the record, we conclude that the improper statement was isolated in nature, as it was only made once during the state's rebuttal closing argument. Accordingly, this factor weighs against any finding that the impropriety amounted to a due process violation. Cf. *State* v. *Warholic*, supra, 278 Conn. 398 ("the instances of prosecutorial [impropriety] were not isolated because they occurred during both the cross-examination of the defendant and the prosecutor's closing and rebuttal arguments").

The fourth *Williams* factor is the centrality of the impropriety to the critical issues in the case. *State* v. *Williams*, supra, 204 Conn. 540. In its brief to this court, the state conceded that "some of the challenged comments were directed to a central issue in the case— intoxication." We agree that this impropriety was central to the present case, which turned on whether the state had proven that the defendant was operating an automobile while under the influence of intoxicating

liquor, and the impropriety gave the clear impression that because the defendant attempted to retain an attorney when he was asked to take a Breathalyzer test, he was under the influence of intoxicating liquor.

With respect to the fifth factor, namely, the strength of the curative measures adopted; *State* v. *Williams*, supra, 204 Conn. 540; the state concedes that the trial court did not implement any corrective measures directed specifically at the improper comment here at issue. It argues, however, that this lack of curative measures is directly attributable to the defendant's failure to object to the improper comments at trial. We agree. "We emphasize the responsibility of defense counsel, at the very least, to object to perceived prosecutorial improprieties as they occur at trial, and we continue to adhere to the well established maxim that defense counsel's failure to object to the prosecutor's argument . . . when [it is] made suggests that defense counsel did not believe that [it was] unfair in light of the record of the case at the time. . . . Moreover . . . defense counsel may elect not to object to arguments . . . that he or she deems marginally objectionable for tactical reasons, namely, because he or she does not want to draw the jury's attention to [them] or because he or she wants to later refute that argument . . . . The same principles hold true in regard to requests for special instructions. The failure by the defendant to request specific curative instructions frequently indicates on appellate review that the challenged instruction did not deprive the defendant of a fair trial." (Citation omitted; internal quotation marks omitted.) *State* v. *Stevenson*, 269 Conn. 563, 597–98, 849 A.2d 626 (2004).

Moreover, although the trial court did not give specific instructions directed at the misconduct, we conclude that the court's general instructions, which instructed the jury that arguments by counsel are not evidence, adequately addressed the improper remarks.

See *State* v. *Young*, 76 Conn. App. 392, 406, 819 A.2d 884 (impact of prosecutorial impropriety lessened when trial court instructed jury that statements and arguments of counsel were not evidence), cert. denied, 264 Conn. 912, 826 A.2d 1157 (2003).

Finally, we consider the sixth *Williams* factor, namely, the strength of the state's case. *State* v. *Williams*, supra, 204 Conn. 540. "[W]e have never stated that the state's evidence must have been overwhelming in order to support a conclusion that prosecutorial [impropriety] did not deprive the defendant of a fair trial." (Internal quotation marks omitted.) *State* v. *Stevenson*, supra, 269 Conn. 596. In the present action, however, the state's case was strong. Burke testified that the defendant exhibited multiple signs of being under the influence of intoxicating liquor, including a disheveled appearance, an odor of alcohol, and glassy and bloodshot eyes. Burke's testimony was corroborated by the testimony of the other driver, who testified that she noticed an odor of alcohol on the defendant's breath. Another witness and Prusinowski opined that the defendant was under the influence of intoxicating liquor on the basis of their observations of him at the accident scene. Additionally, the defendant admitted that he had been consuming alcohol since the morning of the accident. After administering two field sobriety tests, Burke determined that the defendant had failed them. Burke also testified that the defendant refused to perform the third field sobriety test. The evidence also demonstrated that the defendant refused to take a Breathalyzer test at the police barracks, a fact from which the jury was permitted to draw an unfavorable inference against him. *State* v. *Seekins*, 123 Conn. App. 220, 229–30, 1 A.3d 1089, cert. denied, 298 Conn. 927, 5 A.3d 487 (2010).

Although the improper comments were both uninvited and central to the critical issue in the case, they

were not particularly severe, as evidenced by defense counsel's failure to object to or seek a cure for them, and they were limited to a brief statement in the prosecutor's rebuttal closing argument. Here, where the state's case against the defendant was strong and the jury was properly instructed that the statements and argument of counsel are not evidence, we conclude that the prosecutor's improper remark did not deprive the defendant of a fair trial.

The judgment is affirmed.

In this opinion the other judges concurred.